# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re** | |
| WARREN L. BAKER, | **Bankruptcy Case No. 08-02914-JDP** |
| Debtor. | |

_____

## MEMORANDUM OF DECISION

_____

**Appearances**:

D. Blair Clark, LAW OFFICES OF D. BLAIR CLARK, Boise, Idaho, Attorney for Debtor.

Gary L. McClendon, Boise, Idaho, Attorney for United States Trustee.

Counsel for chapter 11[1] Debtor Warren Baker, attorney D. Blair Clark, has applied for approval and payments of interim compensation

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 1

and reimbursement of expenses. 11 U.S.C. § 331; Docket No. 73. The United States Trustee ("UST") objected. Docket No. 78. After an August 19, 2009 hearing at which the parties appeared and presented arguments, the Court took the issues raised by the fee application and objection under advisement. This Memorandum constitutes the Court's findings, conclusions and disposition. Rules 7052; 9014.

The bankruptcy case was originally commenced under chapter 13 on December 21, 2008, Docket No. 1, but quickly converted to a chapter 11 case via Debtor's motion filed on January 23, 2009, in an order entered on February 26. Docket Nos. 21, 41.[2] Mr. Clark's application to be employed as counsel for the chapter 11 debtor was filed on February 16, 2009, Docket No. 34, and served on interested parties and the UST on February 17, 2009, Docket No. 35. An order approving his employment was not entered until May 30, 2009, Docket No. 75, but according to that order, its effective date

---

[2] Given the amount of debt listed in Debtor's schedules, it is doubtful Debtor was ever eligible for relief under chapter 13. *See* 11 U.S.C. § 109(g); Docket No. 1, Schedules D and F.

MEMORANDUM OF DECISION - 2

was February 26, 2009.[3]

Since the conversion to chapter 11, the bulk of Mr. Clark's activity in this case has consisted of representing Debtor in an attempt to defeat a motion for stay relief filed by Syringa Bank. The bank was the primary lender to Debtor's company, Landscape Innovations, LLC, and because he guaranteed the debt, Debtor's principal unsecured creditor. Docket No. 67. Debtor's defense to the motion, advanced through Mr. Clark, was that because the LLC was dissolved by Debtor shortly after the bankruptcy filing, Debtor succeeded to ownership of the company's assets, which he could use to reorganize his, and the company's, financial affairs through a plan in this chapter 11 case. Docket No. 69. After a contested evidentiary hearing, the Court ruled that the LLC's assets were not vested in Debtor

---

[3] Under LBR 2014.1(c), the effective date of such an order is, normally, the date of service of the employment application, which in this case was February 17, 2009. The Court presumes Mr. Clark used the later effective date of February 26, since that was the date the order of conversion to chapter 11 was entered. This makes sense; counsel's employment as attorney for the chapter 11 debtor will be deemed effective on February 26, 2009.

MEMORANDUM OF DECISION - 3

and the bankruptcy estate merely as a result of the recording of articles of dissolution for the LLC, nor were those assets protected by the automatic stay in Debtor's case. As a result, the Court granted Syringa Bank's motion for relief from the automatic stay. Docket No. 82.

Through his fee application, Mr. Clark requests $4,879.00 for legal services, and reimbursement of $992.78 in costs. When Mr. Clark applied for this award of fees and costs, the UST raised several concerns in its objection. First, it pointed out that Mr. Clark had not filed a Rule 2016(b) disclosure of his fee arrangement with his client.[4] Second, the UST objected to approval of fees for services rendered by Mr. Clark during the bankruptcy case prior to the effective date of the order approving his representation of the chapter 11 debtor. Finally, the UST disputed whether Mr. Clark's services in attempting to defend against the bank's stay relief motion based upon his "Debtor now owns the LLC assets" argument

---

[4] A disclosure form was filed on August 19, immediately after the hearing on Mr. Clark's fee application. Docket No. 88.

MEMORANDUM OF DECISION - 4

conferred any benefit on Debtor. There is considerable merit to two of the UST's arguments.

Mr. Clark did not need prior Court approval to initiate, and to represent Debtor during the chapter 13 case. Subject to the discussion below, Mr. Clark's services provided after the bankruptcy was filed, but prior to conversion to chapter 11 on February 26, 2009, are compensable without prior court approval as administrative expenses under § 330(a)(4)(B) and § 503(b).[5]

However, the position taken by Debtor, through Mr. Clark, in opposition to the bank's stay relief motion – that Debtor's postpetition dissolution of his LLC vested him with all the company's assets for use in

---

[5] In his application, Mr. Clark suggests the preconversion fees "are Chapter 13 priority claims, while those [for] February 26 and after are Chapter 11 priority." Docket No. 73 at 1. Since this remains a chapter 11 case (at least for now), this is a distinction without a difference, since all would constitute § 503(b)(2) administrative expenses entitled to priority under § 507(a)(2). Of course, if this case is at some time converted to a chapter 7 case, preconversion administrative expenses would be subordinated to payment of chapter 7 administrative expenses under § 726(b).

MEMORANDUM OF DECISION - 5

his chapter 11 case – was, frankly, an extremely weak one in light of the Idaho statutes and case law. *See In re Aldape Telford Glazier, Inc.*, ___ B.R. ___, 2009 WL 2216594 *3 (Bankr. D. Idaho July 23, 2009); *In re Young*, 409 B.R. 508, (Bankr. D. Idaho 2009).[6] Even so, the Court will not, as requested by the UST, completely disallow Mr. Clark's request for compensation for representing his client in defending against that motion.

The Court is reluctant to be too quick to condemn the judgment exercised by counsel in how best to represent his or her client's interests. For example, conceivably, through assertion of his defensive position, Mr. Clark may have been able to negotiate some sort of compromise or workout of Syringa Bank's claim. On the other hand, once the facts were developed, and Mr. Clark was unable to present any persuasive legal authority to the bank or the Court to support his novel view of the law, it

---

[6] Both of these decisions were issued after Mr. Clark submitted his written arguments to the Court, but prior to oral argument on the UST's motion. Even so, the corporate dissolution statutes analyzed by the Court in these decisions were the same ones applicable in this case.

MEMORANDUM OF DECISION - 6

was misguided for him to continue Debtor's fight with the bank. Accordingly, in the exercise of the Court's discretion, the amount of Clark's fee request will be discounted by $2,000 to reflect that, to a considerable extent, Mr. Clark's efforts in pursuing this unsuccessful, and largely unsupportable, defense to the bank's motion conferred little discernable benefit on his client or the estate.  *See* § 330(a)(4)(A)(ii)(I); *Howard v. High River Ltd. P'ship*, 369 B.R. 111, 118 (S.D.N.Y. 2007) ("a bankruptcy court may consider the fact that a professional's services were unsuccessful when calculating a fee award").

Finally, as has been the practice of the Court in past cases, Mr. Clark's fee request will be discounted by 10% because of his failure to timely file the fee disclosure required by Rule 2016(b).  *See In re Combe Farms, Inc.*, 01.1 I.B.C.R. 7, 9 (Bankr. D. Idaho 2001).  That such an experienced debtor's lawyer as Mr. Clark fails to observe the requirements of this important Rule requires some adverse consequence.

In summary, Mr. Clark's fees will be approved in the sum of

MEMORANDUM OF DECISION - 7

$2,879.00, representing the amount requested, less a $2,000 reduction. The allowed difference will then be discounted further by $287.90 (*i.e.*, 10%) to account for the violation of Rule 2016(b). Finally, there is no reference in Mr. Clark's application to the fact that, according to his late-filed Rule 2016(b) disclosure, Debtor apparently paid an $800 prebankruptcy retainer to Mr. Clark. This sum should also be deducted from the fees awarded at this time.

All things considered, Mr. Clark's fee award shall be $1,791.10. There being no objection to them, Mr. Clark's requested costs in the amount of $992.78 will be approved.

One other point deserves attention. There has been no adequate showing in this case that Debtor is capable of, or should be allowed to, pay any administrative expenses, such as counsel fees and costs, at this time. The future of this reorganization is murky. Indeed, the Court is perplexed concerning what sort of chapter 11 plan can be proposed given the relief granted to Debtor's primary creditor, Syringa Bank. Moreover, Debtor is

MEMORANDUM OF DECISION - 8

delinquent in filing monthly financial reports, and the last ones filed indicated that Debtor was losing money and had a negative balance in his bank account.[7] While Mr. Clark's fees and costs will be approved as set forth above, no payment will be authorized without further order of the Court, sought after Debtor has proposed a plan and disclosure statement, and otherwise demonstrated an ability to pay administrative expenses.

A separate order will be entered.

Dated: September 17, 2009

*[signature]*

Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[7] In his application, Mr. Clark repeatedly makes reference to a pending motion to dismiss this case supposedly filed by the UST. A review of the Court's docket shows no such motion has been filed.

MEMORANDUM OF DECISION - 9